UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jay Thomas Nygard,  				Civil No. 23-509 (DWF/DLM)

          Plaintiff,

v.  						MEMORANDUM
						OPINION AND ORDER

City of Orono, *a Minnesota Municipality*, Dennis Sabourin Walsh, *Orono Mayor in his individual and official capacities*, Dennis Sabourin Walsh, *Orono Resident*, Correy Farniok*, Orono Police Chief in his individual and official capacities*, Soren Mattick, *Orono Attorney in his individual and official capacities*, Jared Shepherd, *Orono Attorney in his individual and official capacities*, Campbell Knutson, P.A.,

          Defendants.

## INTRODUCTION

This matter is before the Court on two motions to dismiss, one brought by Defendants Campbell Knutson, P.A., Soren Mattick, and Jared Shepherd (Doc. No. 15) and another brought by Defendants Correy Farniok, City of Orono, and Dennis Sabourin Walsh[1] (Doc. No. 21). Plaintiff Jay Thomas Nygard opposes both motions. (Doc. Nos. 44, 47.) Also before the Court is Nygard's motion to separate Defendant Orono Resident Walsh from Defendants City of Orono, Orono Police Chief Farniok, in his

---

[1]     Defendant Dennis Sabourin Walsh is sued three times: in his individual and official capacities as Orono Mayor and as an "Orono Resident." (*See* Doc. No. 1 ("Compl.") at 1.)

individual and official capacities, and Orono Mayor Walsh, in his official and individual capacities. (Doc. No. 39.) For the reasons set forth below, the Court grants both motions to dismiss and denies Nygard's motion to separate defendant as moot.

## BACKGROUND

This case is part of series of lawsuits between Nygard, his neighbors, and the City of Orono that have been litigated in both state and federal court over the past twelve years.[2] Because the allegations of the Complaint encompass numerous prior lawsuits[3], the Court begins with an overview of cases relevant to this action.

## I.    First Wind Turbine Case

In 2010, Nygard inquired about Orono's regulations regarding wind turbines. (Doc. No. 24-1 at 3.) Melanie Curtis, Orono's City Planning and Zoning Coordinator, told Nygard that "wind generators were not an allowed use within the City." (*Id.*) Nygard then submitted a Building Permit Application for construction of a wind generator, which Orono denied. (*Id.*) Nygard went ahead with his plans to build a wind generator on his property and began installing concrete footings for the generator. (*Id.*) Orono sent Nygard a cease-and-desist letter, instructing Nygard to stop further construction or face litigation. (*Id.*)

---

[2]     Defendants have included the relevant case decisions and briefings as exhibits to their motions to dismiss. The Court cites to these documents, where available, rather than citing the specific cases.

[3]     "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

Orono then sued Nygard and after years of litigation, Orono won and Nygard was instructed to remove the wind generator from his property. (*Id.* at 24.) Nygard did not remove the generator and was held in contempt of court. (*Id.* 29.) The court gave Nygard multiple chances to comply with the order. (*Id.* at 29-47.) After over six months of noncompliance, the court ordered Nygard to be taken into custody. (*Id.* at 48.) The court noted that he would be released upon the submission of evidence "satisfying th[e] Court that he has fully complied with" the original order. (*Id.*) On October 5, 2015, Jay and Kendall Nygard filed an inspection report that indicated that they had fully complied with the order. (*Id.* at 51.) The court noted that it "gave the City of Orono an opportunity to respond to [the Nygards'] submissions," but "[n]o response was received." (*Id.* at 50.) The next day, the court ordered Nygard to be released from custody. (*Id.* at 51.)

## II.    Second Wind Turbine Case

In 2013, Orono created an ordinance, banning wind turbines in Orono. (Doc. No. 24-3 at 3.) Nygard sued the City of Orono, arguing that the ordinance was preempted by Minnesota State law. (*Id.*) The court ruled in Nygard's favor but noted that the "ruling does not leave the City without authority to regulate [small wind energy conversion systems ("SWECS")] within its borders. It merely prohibits the complete banning of all SWECS within the City." (*Id.* at 9.)

## III.   Third Wind Turbine Case

In April 2015, Orono created a new ordinance. (*Id.* at 102.) Nygard, through his company Go Green Energy ("GGE"), sued Orono again, this time asserting various tort claims. (*Id.* at 104.) Nygard "refer[red] to the City's passage of the ordinance and

3

enactment of the ordinance as the root of [his] harm for [his] inability to obtain business contracts." (*Id.*)  The court held in favor of Orono, concluding that Orono was statutorily immune from the suit.  (*Id.* at 108.)  Nygard appealed.  *See Go Green Energy, LLC v. City of Orono*, No. A16-1125, 2017 WL 1316137, at *1 (Minn. Ct. App. Apr. 10, 2017).  And the Minnesota Court of Appeals affirmed.  *Id.* at *4.

### IV. Lanpher Case

In 2017, Nygard's neighbors, Peter Lanpher and Penny Rogers, sued Jay and Kendall Nygard for, among other things, "public and private nuisance relating to a windmill [the Nygards] erected on their property."  (Doc. No. 24-5 at 117; Doc. No. 24-4 at 1-22.)  Lanpher and Rogers also sued Orono for a writ of mandamus compelling Orono to enforce the new wind turbine ordinance and remove the wind turbine from the Nygards' property.  (Doc. No. 24-5 at 117.)  The Nygards filed a counterclaim, asserting various claims including a claim that Minnesota law preempts the new Orono ordinance regulating wind turbines.  (*Id.*)  Additionally, the Nygards brought claims against Lanpher, Rogers, and Mayor Walsh for intentional and negligent infliction of emotional distress.  (*Id.*)

The court concluded that the Nygards' claim that Minnesota law preempts the Orono ordinance was barred by res judicata, because the Nygards had already brought a case against Orono related to the new ordinance.  (Doc. No. 24-4 at 161.)  While the Nygards did not argue that Minnesota law preempted the ordinance, that argument could have been brought in the previous case.  (*Id.*)

In January 2018, the Nygards attempted to amend their answer to include additional claims against Orono, City Attorney Soren Mattick, various Orono Police Officers, and the Orono Chief of Police Correy Farniok.  (Doc. No. 24-5 at 118.)  The court denied the motion to amend, noting that the amended pleadings were "repetitive in the extreme and confusingly assembled." (*Id.* at 120.)  The court further noted that "[t]he confusion engendered by [the Nygards'] pleadings is so severe that even a four hour hearing held over two days couldn't adequately clarify the causes of action [pled] and the basis upon which each of the claims were made." (*Id.*)  The Nygards moved for reconsideration, which the court denied. (*Id.* at 129.)  In December 2018, the court permanently enjoined the Nygards from constructing or placing wind turbine structures on their property in violation of Orono ordinances.  (Doc. No. 24-6 at 3.)  The Nygards appealed and in December 2019 the appeal was dismissed as untimely.  (*Id.* at 29-30.)

## V.     Driveway Case

In 2021, the Nygards brought a case in federal court against Orono "after they were prosecuted for replacing a driveway without a permit." (*Id.* at 93.)  "The Nygards challenged the permit ordinance as unconstitutionally vague and raised claims of abuse of process and malicious prosecution." (*Id.*)  The court granted Orono's motion to dismiss all of the claims. (*Id.*)  "The Nygards appealed, and the Eighth Circuit reversed the dismissal of Kendall Nygard's common law malicious-prosecution claim, but otherwise affirmed the Court's order." (*Id.*)  The Nygards petitioned for certiorari, and the United States Supreme Court denied the petition. (*Id.*)  Upon remand, the court declined to

5

exercise supplemental jurisdiction over the remaining malicious-prosecution claim and dismissed the claim without prejudice. (*Id.* at 95.)

## VI. Property Variance Denial

In March 2020, Nygard submitted a variance application to adjust the common property line between 1380 and 1386 Rest Point Road. (Doc. No. 25-3 at 1.) The Planning Commission voted to deny the request. (*Id.*) Nygard revised his request (Doc. No. 25-4 at 15-17), and the Orono City Council denied the request (*id.* at 78-83). Nygard did not appeal the denial.

## VII. Current Action

Plaintiff Jay Nygard now brings this action against Defendants City of Orono, Orono Mayor Dennis Sabourin Walsh, Orono Police Chief Correy Farniok, Orono Attorney Soren Mattick, Orono Attorney Jared Shepherd, and Campbell Knutson, P.A. (Compl.) Nygard argues that Orono and the other Defendants worked together to bring fraudulent civil and criminal actions against him. (*Id.* ¶¶ 58, 79, 350.) He asserts that Defendants did this to prevent him from harvesting wind power and to drive him out of town. (*Id.* ¶¶ 367, 370, 422-423.) Defendants move to dismiss the action. (Doc. Nos. 15, 21.) The Court addresses the two motions below.

## DISCUSSION

## I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th

6

Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. Moreover, to the extent Nygard alleges fraud in his Complaint, Nygard must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

In addition, the Court notes that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Even so, a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

7

**II.     Rule 8**

As an initial matter, the Complaint, which consists of 525 paragraphs and nearly 500 pages of exhibits, is hard to follow, unreasonably lengthy, and poorly organized. Nygard attempts to string together twelve years of grievances against Orono and others—from civil actions related to wind power to conflicts with Mayor Walsh to events Nygard has named the "toilet water scandal" and "fence viewer conspiracy."  His Complaint is a summary of nearly every criminal, administrative, or civil action that he has been a part of in the past twelve years, and he lists as Defendants every person or entity that has been involved in unfavorable actions against him.  Nygard's Complaint constitutes a "kitchen sink" or "shotgun" pleading, as Nygard appears to bring "every conceivable claim against every conceivable defendant."  *Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).  Courts in this district have repeatedly criticized such complaints because they "unfairly burden defendants and courts."  *Id.*  A plaintiff "who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support."  *Id.*

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Nygard's pleadings are neither short nor plain.  This is not the first time that Nygard has brought a kitchen-sink complaint.  In the 2017 Lanpher case, the court denied Nygard's motion to amend, noting that the amended pleadings were "repetitive in the extreme and confusingly assembled."  (Doc. No. 24-5 at 120.)  Notably,

many of the factual allegations in that amended complaint mirror those asserted in this action. While it is Nygard's right to proceed *pro se*, he is still required to comply with the rules. And Nygard has already been warned not to submit unreasonably lengthy and poorly organized pleadings. The Court could dismiss Nygard's Complaint on this basis alone.

### III.   Statute of Limitations

For now, the Court focuses only on Nygard's federal claims, as these claims form the basis of the Court's subject-matter jurisdiction. *See* 28 U.S.C. § 1331. These claims include the following: (1) Racketeer Influenced and Corrupt Organizations Act ("RICO") violations; (2) retaliation under the First Amendment; (3) violation of the Fourth Amendment; (4) violation of the Fourteenth Amendment; and (5) *Monell*.

Many of these claims are barred by the statute of limitations. While Nygard does not explicitly state this in his Complaint, the Court presumes that Nygard's claims under the First Amendment, Fourth Amendment, Fourteenth Amendment, and *Monell* are brought under 42 U.S.C. § 1983. Section 1983 claims are "best characterized as personal injury actions" for purposes of the statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 278-80 (1985). The statute of limitations for personal injury actions in Minnesota is six years. Minn. Stat. § 541.05, subd. 1(5). Nygard filed his Complaint on March 3, 2023. Thus, only injuries which occurred on or after March 3, 2017, may form the basis for Nygard's Section 1983 claims. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 n.3 (8th Cir. 1995) ("In Minnesota, § 1983 claims are governed by the six-year limitations period of Minnesota's personal-injury statute.").

The entirety of Nygard's Fourth Amendment violation claim is barred by the statute of limitations, because Nygard was both arrested and released from jail in October 2015. That claim will therefore be dismissed with prejudice. The only events in the Complaint that took place after March 3, 2017, are the following: (1) Lanpher's lawsuit against Nygard, (2) litigation related to the driveway permit, and (3) Orono's denial of Nygard's property variance. The remainder of Nygard's allegations related to his § 1983 claims are barred.

RICO conspiracy claims "are governed by a four-year statute of limitations." *Kleher v. A.O. Smith Corp.*, 87 F.3d 231, 238 (8th Cir. 1996), *aff'd*, 521 U.S. 179 (1997). "The four-year statute of limitations for civil RICO claims begins when the plaintiff discovers or should have discovered the injury." *Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, 992 F.3d 674, 681 (8th Cir. 2021).

Nygard asserts that he was injured "the day Orono first sued [him] in March[] 2011" (Compl. ¶ 368). Thus, based on Nygard's own pleadings, he discovered the injury in 2011 and the four-year statute of limitations began then. "[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Even if Nygard were to dispute the 2011 date, the record clearly reflects that Nygard discovered not only the injury but the entire alleged conspiracy well before March 3, 2019. In January 2018, Nygard asserted in an amended complaint in the Lanpher case that Orono, Walsh, Lanpher, and Rogers "entered into multiple secret agreements to target [him]." (Doc. No. 24-5 at 36.) He described their actions as "a relentless multi-year campaign to recruit Orono city attorney Mattick, city

10

staff, police officers and prosecutors to bully the Nygards." (*Id.* at 79.) He further asserted that the Orono Police Department was involved in targeting him and intentionally withheld police reports from him. (*Id.* at 37.) He concluded that Orono, Walsh, and Lanpher were working together to "drive the Nygards out of town." (*Id.* at 38.) Based on these public records, it is clear that Nygard was injured and discovered the injury related to the alleged RICO conspiracy well before March 3, 2019. His RICO claim related to those injuries is therefore barred by the statute of limitations.

The next issue then is whether Nygard has alleged any "new and independent injury" that provides the basis for a new cause of action. *Waldner v. N. Am. Truck & Trailer, Inc.*, 277 F.R.D. 401, 407 (D.S.D. 2011) (internal quotations and citation omitted). The only injuries that Nygard alleges that occurred after March 3, 2019, are certain injuries related to the Lanpher case, Orono's denial of Nygard's property variance, and the driveway prosecution. Because, as discussed below, other doctrines apply to these allegations, the Court need not address whether these events resulted in new and independent injuries and therefore constitute a new cause of action. But Nygard's remaining allegations, outside of these three events, are clearly barred by the statute of limitations.

**IV.**   ***Rooker-Feldman* Doctrine**

To summarize above, the only allegations related to Nygard's federal claims—under § 1983 and RICO—that are not definitively barred by the statute of limitations are parts of the Lanpher case, litigation related to the driveway permit, and Orono's denial of Nygard's property variance. Because Nygard's claims related to the Lanpher case and

11

driveway prosecution relate to prior judicial proceedings, another issue that confronts Nygard is the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine states that district courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995).  The doctrine "bars a district court from hearing cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 643 (8th Cir. 2022) (internal quotations and citation omitted).  Under this doctrine, the Court cannot consider a federal claim if the claim is "inextricably intertwined with the claims asserted in state court" such that "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."  *Charchenko*, 47 F.3d at 983.

Nygard asserts that the Lanpher and driveway actions were fraudulent and that, by bringing the actions and participating in them, Defendants violated his constitutional rights and took part in a conspiracy to drive him out of town.  Nygard describes the driveway prosecution as a "[s]ham [c]riminal [p]rosecution of Mr. Nygard."  (Compl. at 24.)  In other words, Nygard appears to assert that he should not have been prosecuted and there was no basis for the prosecution.  A state court, however, concluded otherwise.  The state court held that there was probable cause to prosecute Nygard because "Nygard's installation of hardcover without a permit supported probable cause under Orono City Code section 86-66." *Nygard v. City of Orono*, 39 F.4th 514, 521 (8th

12

Cir. 2022) (summarizing the state court case). Nygard's claims related to the "sham" driveway prosecution directly challenge that state court decision finding probable cause to prosecute Nygard. His claims based on the prosecution are therefore barred by the *Rooker-Feldman* doctrine.

Similarly, Nygard asserts that the Lanpher case was fraudulent. He argues that that Lanpher and Orono wrongfully "double team[ed]" him in court and that Orono filed a "[f]raudulent counterclaim" against him. (Compl. ¶¶ 282, 350.) He also asserts that Orono should have sought attorney's fees and costs from Lanpher and not the Nygards. (*Id.* ¶ 290.) He argues that Shepherd, who was an attorney for Orono at the time, lied in court, which impacted the outcome of the case. (*Id.* ¶¶ 283-284.) Additionally, Nygard argues that his company, GGE, should have never been included in the Lanpher case and asserts that "GGE now has a judgment against it for activities it was never involved in." (*Id.* ¶ 104.) Nygard asks the Court to "determine if th[e] litigation as a whole (and other cases and processes) were fair, legal[,] and correct from the beginning to the end." (Doc. No. 44 ¶ 79.) In other words, Nygard is asking the Court to review and reject prior state-court decisions. For the Court to rule in Nygard's favor, the Court would have to conclude that the state court in the Lanpher case wrongly decided numerous issues. For that reason, Nygard's claims related to the Lanpher case are barred by the *Rooker-Feldman* doctrine.

V.   *Younger* **Abstention Doctrine**

The *Younger* abstention doctrine applies to Nygard's allegations related to Orono's denial of his property variance application. The *Younger* abstention doctrine

13

instructs federal courts to abstain "from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010). Under the *Younger* doctrine, a plaintiff "must exhaust his state appellate remedies before seeking relief in the District Court." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) (internal quotations and citation omitted). In other words, "[a] district court should abstain where plaintiff did not appeal an administrative decision to a higher state court." *3005 Cedar, LLC v. City of Minneapolis*, No. 09-cv-1580, 2010 WL 455307, at *3 (D. Minn. Feb. 3, 2010).

In this case, while Nygard's request for a property variance was denied by City Council, Orono Ordinance § 78-99(a) provides that "[a]ll decisions made by the city regarding zoning shall be final, except that any aggrieved person shall have the right to appeal within 30 days . . . to the District Court in Hennepin County." Nygard did not appeal the denial of his variance application. Additionally, the issue at the heart of the request is a property right, which is an important state interest. And Nygard could have raised any federal questions in an appeal to the state district court. *See 3005 Cedar*, 2010 WL 455307, at *3 ("Where the state provides a proper appellate forum, the Court would do injury to the principles of comity if it allowed plaintiffs to side-step this process."). Thus, the *Younger* abstention doctrine applies and the Court will abstain from considering any claims related to the property variance request.

Nygard also submitted two declarations (Doc. Nos. 57, 62) where he provides additional allegations related to a new case. He alleges that Orono has unlawfully refused to provide him with public documents related to a criminal case. Nygard's declarations are procedurally improper.[4] Nygard may not supplement his Complaint with new allegations without Defendants' written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Nygard has neither. Even if Nygard had complied with the rules and moved to amend his Complaint to assert these additional allegations, the Court would have denied Nygard's motion based on the *Younger* abstention doctrine. There is currently an ongoing state proceeding where these issues, related to data collected by law enforcement agencies under Minn. Stat. § 13.82, are being litigated. *See Nygard v. City of Orono et al.*, No. 27-cv-23-15124 (Minn. Dist. Ct. filed Sept. 26, 2023). This Court therefore will abstain from interfering with that state proceeding.

## VI. Supplemental Jurisdiction

All of Nygard's federal claims against Defendants are barred by either the statute of limitations, the *Rooker-Feldman* doctrine, or the *Younger* abstention doctrine.[5] That

---

[4] Nygard submitted a third declaration on January 2, 2024. (Doc. No. 63.) This declaration, like his first two, is procedurally improper. Moreover, the allegations within the declaration relate to the driveway prosecution. As noted above, his claims related to the driveway prosecution are barred by the *Rooker-Feldman* doctrine. The Court will not consider this declaration, and even if it had, the Court's decision would remain the same.

[5] Defendants argue that a number of other doctrines apply to Nygard's claims, including claim preclusion, absolute immunity, qualified immunity, statutory immunity, official immunity, and the *Heck* doctrine. Moreover, Defendants assert that even if Nygard's claims were not barred, he has failed to state a claim upon which relief may be granted. Because the Court dismisses Nygard's federal claims on other grounds, the Court need not address these additional arguments.

leaves only Nygard's state-law claims. A federal court may decline to exercise supplemental jurisdiction over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (internal quotations and citation omitted). Because this case remains in the very early stages of litigation, the Court declines to exercise supplemental jurisdiction over the state-law claims. These claims will be dismissed without prejudice. That being said, the Court encourages Nygard to read the Court's order carefully, as many of his state-law claims may face similar issues as his federal claims.

## CONCLUSION

For the reasons outlined above, the Court dismisses with prejudice Nygard's § 1983 claims (Counts III, IV, V, VI) and RICO conspiracy claim (Count II). The Court also dismisses Nygard's state-law claims without prejudice (Counts I, VII, VIII, IX, X, XI). Because the entirety of Nygard's Complaint is dismissed, the Court also denies his motion to separate defendant as moot.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Campbell Knutson, P.A., Soren Mattick, and Jared Shepherd's amended motion to dismiss (Doc. No. [15]) is **GRANTED.**

2. Defendants Correy Farniok, City of Orono, and Dennis Sabourin Walsh's motion to dismiss (Doc. No. [21]) is **GRANTED.**

3. Nygard's motion to separate defendant (Doc. No. [39]) is **DENIED AS MOOT.**

4. Nygard's § 1983 claims (Counts III, IV, V, VI) and RICO conspiracy claim (Count II) against all Defendants **ARE DISMISSED WITH PREJUDICE.**

5. Nygard's state-law claims against all Defendants (Counts I, VII, VIII, IX, X, XI) are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 5, 2024       s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge